# EXHIBIT 2

# County Civil

**Case Number**

1135271

**Court**

All

**Status**

-All

**File Date (From)**

MM/DD/YYYY

**File Date (To)**

MM/DD/YYYY

SEARCH    CLEAR

---

⦿ **Party**  ◯ **Attorney**  ◯ **Company**

**Last Name**

**First Name**

**File Date (From)**

MM/DD/YYYY

**File Date (To)**

MM/DD/YYYY

SEARCH    CLEAR

9 Record(s) Found.

| Case | File Date | Type Desc | Subtype | Style | Status | Judge | Cour |
|------|-----------|-----------|---------|-------|--------|-------|------|
| 1135271 | 06/07/2019 | CONTRACT - OTHER | | PHILIP NIGRO VS UNITED PROPERTY & CASUALTY INSURANCE COMPANY | Open | JIM KOVACH | 2 |

| Event Date | Event Desc | Comments | | Pgs |
|---|---|---|---|---|
| 09/25/2019 | Proposed Order | | Nigro Order to Compel Appraisal and Abatement.pdf | 2 |
| 09/25/2019 | Notice of Hearing | | Nigro Notice of Hearing - Mt to Compel Abatement.pdf | 1 |
| 09/25/2019 | Motion to Compel | | Nigro Motion to Compel Appraisal and Abatement.pdf | 13 |
| 09/23/2019 | Answer | | Nigro - United Property's Original Answer to Plaintiff's Original Petition 09.23.19.pdf | 5 |
| 09/13/2019 | Return of Service | | NIGRO PHILIP EXECUTED CITATION 9-13-2019.pdf | 4 |
| 07/24/2019 | Original Petition Citation Issued | m/o to atty | Original Petition Citation | 1 |
| 06/07/2019 | Civil Case Information Sheet | | NIGRO CIVIL CASE INFO SHEET 6-7-19.pdf | 1 |
| 06/07/2019 | eFile Original Petition | | NIGRO APPRAISAL PETITION 6-7-19.pdf | 32 |
| 06/07/2019 | Original Petition (OCA) | | | |

6/7/2019 3:40 PM
Diane Trautman
County Clerk
Harris County

Harris County - County Civil Court at Law No. 2

NO. _____.

| | | |
|---|---|---|
| PHILIP NIGRO, | § | IN THE COUNTY CIVIL COURT |
| *Plaintiff* | § | |
| | § | |
| v. | § | AT LAW NUMBER _____. |
| | § | |
| UNITED PROPERTY AND | § | |
| CASUALTY INSURANCE | § | |
| COMPANY, | § | |
| *Defendant* | § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PHILIP NIGRO (herein "Plaintiff"), who files this, its Original Petition, against UNITED PROPERTY AND CASUALTY INSURANCE COMPANY (herein "Defendant") and for cause of action would respectfully show the court as follows:

## I.

### Preliminary Information and Definitions

1. Insured:           PHILIP NIGRO (herein "Plaintiff")

    Policy Number:      UTH028478601 (herein "Policy")

    Claim Number:       2017TX027598 (herein "Claim" or "Claim Number")

    Date of Loss:       8/25/2017 (herein "Date of Loss")

    Insured Property:   4418 KOEHLER STREET, UNIT A, HOUSTON, TX 77007

                        (herein "Property" or "Insured Property")

    Insurer:            UNITED PROPERTY AND CASUALTY INSURANCE COMPANY

                        (herein "Defendant")

                        Defendant's attorney for service is: CT CORPORATION SYSTEM

                        1999 BRYAN STREET, SUITE 900, DALLAS, TX 75201-3136

## II.

### Discovery Control Plan

2. Plaintiff intends for discovery to be conducted under Level 1 of Rule 190 of the Texas Rules of Civil Procedure.

## III.

### Request for Expedited Trial Date

3. Plaintiff requests that the set the case for a trial date that is within 90 days after the discovery period in Rule 190.2(b)(1) ends.

## IV.

### Parties

4. Plaintiff is an individual who resides in Texas.

5. Defendant is a "Foreign" company registered to engage in the business of insurance in the State of Texas. This Defendant may be served with process by in person or certified mail, return receipt requested, by serving: (1) the president, an active vice president, secretary, or attorney in fact at the home office or principal place of business of the company; or (2) leaving a copy of the process at the home office or principal business office of the company during regular business hours.

## V.

### Jurisdiction

6. The court has jurisdiction over the cause of action because the amount in controversy is within the jurisdictional limits of the court and Plaintiff seeks only monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees. Specifically, Plaintiff seeks damages of $75,000.00 and will not accept any more than $75,000.00 at this time. (See attached Binding Stipulaton)

7. The Court has jurisdiction over Defendant because Defendant engages in the business of insurance in

the State of Texas and the cause of action arises out of Defendant's business activities in the State of Texas.

## VI.

## Venue

8.  Venue is proper in HARRIS County, Texas because the insured property is situated in HARRIS County, Texas and/or the contract was signed in HARRIS County, Texas. TEX. CIV. PRAC. & REM. CODE. § 15.032

## VII.

## Facts

9.  Plaintiff was the owner of the Policy issued by Defendant.

10. Plaintiff owns the insured property.

11. Defendant sold the policy, insuring the property that is the subject of this lawsuit to Plaintiff.

12. The Plaintiff suffered a significant loss with respect to the property at issue and may have suffered additional living expenses.

13. Plaintiff submitted its claim to Defendant with a Date of Loss for damage to the dwelling and contents of the home.

14. Defendant assigned a Claim Number to Plaintiff's claim.

15. Defendant failed to properly adjust the claim and summarily improperly paid the claim with obvious knowledge and evidence of serious cosmetic and structural damage.

16. Defendant improperly paid Plaintiffs claim for replacement of the property, even though the policy provided coverage for losses such as those suffered by Plaintiff.

17. The person hired by Defendant to prepare an estimate on Plaintiff's property appeared to be an advocate for Defendant as he/she advocated for a minimal sum of damages Plaintiff sustained.

18. Furthermore, the adjuster hired by Defendant was improperly trained, had inadequate knowledge of

the type and scope of loss, have very little or no hands on experience with construction, and was not qualified to prepare the underlying estimate for damages Plaintiff suffered.

19. As Defendant briefly inspected Plaintiff's home, it created a scope of damages that was significantly less than the amount of damages Plaintiff suffered.

20. Defendant has created this environment of hiring poorly trained adjusters so as to create estimates that are substantially less than what its insured's have actually suffered.

21. Therefore Defendant failed to properly adjust both claims and summarily improperly paid the claims with obvious knowledge and evidence of serious cosmetic and structural damage – hoping that Plaintiff would lack the knowledge of the amount of damage she actually suffered.

22. As Plaintiff strongly disagrees with the lowball scope of loss that Defendant's advocate prepared, Plaintiff has invoked appraisal.

23. All conditions precedent upon the policy had been carried out and accomplished by Plaintiff.

24. From and after the time Plaintiffs claims were presented to Defendant, the liability of Defendant to pay the full claims in accordance with the terms of the policy was reasonably clear.

25. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment.

26. As a result of Defendant's acts and omissions, Plaintiff was forced to retain the attorney who is representing Plaintiff in this cause of action.

27. Plaintiffs experience is not an isolated case.

28. The acts and omissions Defendant committed in this case, or similar acts and omission, occur with such frequency that they constitute a general business practice of Defendant with regard to handling these types of claims.

29. Defendant's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

30. Plaintiff anticipates that Defendant has and will continue to manipulate the claims process and appraisal process in an effort to underpay or deny the claim.

31. Furthermore, Plaintiff anticipates that Defendant has or will require additional steps in claiming policy benefits to which do not exist in the policy.

32. For example, Defendant routinely requires that Plaintiff prove that a dispute exists as to the claimed benefits – even though Plaintiff has sent demand letters, invoked appraisal, and filed this lawsuit to force the appraisal process.

33. Plaintiff anticipates that Defendant will require or attempt to require that Plaintiff sign a unilateral release of claims against Defendant in order for Defendant to pay any appraisal award when the policy for insurance benefits doesn't require that.

34. Specifically, Plaintiff anticipates that Defendant will require a unilateral release of claims against Defendant before issuing payment as a result of the appraisal process.

35. This behavior is strictly forbidden under Texas Insurance Code 541.060.

36. The above actions from Defendant show that it has no intent preform on the contract when performance is due – namely, to pay policy benefits after an insured has suffered a covered loss.

37. This lawsuit is not about the *amount* of loss. Indeed, it is about Defendant's refusal to participate in the appraisal process and the actual damages Plaintiff suffered in forcing Defendant to participate in the appraisal process.

38. Plaintiff reserves all rights to invoke appraisal under the terms of insurance and is filing this lawsuit to enforce its rights of appraisal.

## VIII.

### Causes of Action:

### COUNT 1:

### Breach of Contract

1. Plaintiff and Defendant have entered into a contract for insurance benefits.

2. One of the conditions in the policy is appraisal.

3. Plaintiff has timely invoked appraisal yet Defendant refuses to participate.

4. After numerous demands, Defendant has forced Plaintiff to file a lawsuit to make Defendant participate in appraisal.

5. Plaintiff seeks an order forcing Defendant to participate in appraisal.

6. Plaintiff seeks the actual damages she/he has suffered in forcing Defendant to participate in appraisal.

7. The purpose of appraisal is to determine the amount of an insured loss.  Appraisal is a remedy available under the applicable policy to determine the amount of loss when the parties disagree.  Plaintiff has invoked the appraisal clause of the policy.  Plaintiff seeks Defendant to abide by its own policy provision and asks the Court to order the parties to participate in appraisal.

### Appraisal Demand

8. As set forth above, Plaintiff and Defendant do not agree on the amount of Plaintiff's losses.  Therefore, Plaintiff has sent notice to Defendant that Plaintiff named its appraiser and invoked the Policy's appraisal clause referenced above.

### Once Invoked Appraisal is Mandatory and Enforceable

9. Texas courts specifically enforce the appraisal clause in property insurance policies and this Court has the authority to order the parties to participate in compliance with this policy condition.  *State Farm v. Johnson*, 290 S.W.3d 886 (Tex. 2009); *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 196 (Tex. 2002).  Since 1888, when the Texas Supreme Court decided *Scottish Union & National Ins. Co. v. Clancy*, Texas courts have regularly and consistently enforced appraisal clauses by ordering the parties to comply.  *See Clancy*, 8 S.W. 63 (Tex. 1888); *In re Allstate*, 85 S.W.3d at 196.

10. Texas has consistently recognized appraisal awards as binding and enforceable, and courts indulge every reasonable presumption to sustain them. *See, e.g., Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Once invoked, appraisal is mandatory.

11. A party who refuses to engage in the process is subject to judicial compulsion. Because the amount of loss must be determined in every property damage case, "appraisals should generally go forward without preemptive intervention by the courts." *Johnson*, 290 S.W.3d at 894. Therefore, a court faced with a motion to compel appraisal lacks any discretion to deny it, assuming the party has timely invoked the process and otherwise complied with the policy. *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193 (Tex. 2002) (orig. proceeding). *Johnson*, 290 S.W.3d at 888 ("While trial courts have some discretion as to the timing of an appraisal, they have no discretion to ignore a valid appraisal clause entirely."); *Vanguard Underwriters Ins. Co. v. Smith*, 999 S.W.2d 448, 449 (Tex. App.—Amarillo 1999, no pet.) (mandamus will issue against a failure to order an appraisal in the proper circumstances). An appraisal clause binds the parties to have the extent or amount of the loss determined in a particular way. *Johnson*, 290 S.W.3d at 895.

12. The appraisal clause is thus mandatory and non-revocable and is specifically enforceable by either party. *See, e.g., Standard Fire Ins. Co. v. Fraiman*, 514 S.W.2d 343, 344-46 (Tex. Civ. App.—Houston [14th Dist] 1974, no writ) (holding that an insured can enforce the appraisal provision against an unwilling insurer); *Laas v. State Farm Mut. Ins. Co.*, 2000 WL 1125287, at *4-5 (Tex. App.—Houston [14th Dist] 2000, pet. denied) (holding the trial court has power to appoint an umpire when the parties' appointed appraisers fail to do so).

13. In *Allstate*, the Texas Supreme Court explained that denying appraisal vitiates the insurer's ability to defend against a breach of contract claim because appraisal goes to the heart of such a claim. *Allstate*, 85 S.W.3d at 196. Accordingly, the *Allstate* Court granted mandamus relief when the trial court

denied a motion to compel appraisal, finding that the denial constituted an abuse of discretion and that the insurer lacked an adequate remedy by appeal.

14. The appraisal clause is a condition precedent to coverage for damages under property insurance policies. *State Farm v. Johnson*, 290 S.W.3d 886, 894 (Tex. 2009) ("…appraisal is intended to take place before suit is filed; [the Texas Supreme Court] and others have held that it is a condition precedent to suit."). The Policy contains provisions that specifically condition coverage actions on compliance by the insured with policy conditions such as the appraisal clause.

15. Pursuant to the appraisal clause and the suit against us clause, compliance with the appraisal process is a condition precedent to coverage and to the validity of Plaintiff's suit against Defendant. Either party can invoke appraisal. Both parties are bound by that invocation. Whether appraisal begins before or during litigation, the lawsuit must be abated. *Woodward v. Liberty Mut. Ins. Co.,* No. 3:09-CV-0228-G, 2010 WL 1186323 *3 (N.D. Tex. Mar. 26, 2010). "When one party to an insurance contract properly invokes the contract's appraisal clause ... a court should exercise its discretion to stay the suit pending completion of the appraisal." *Woodward,* 2010 WL 1186323 at *3; *see also In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 565 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[a] remedy to enforce a condition precedent in its policy is abatement of the case"); *see also United Neurology, P A v. Hartford Lloyd's Ins. Co.,* No. H-10-4248, 2012 WL 423417 (S.D. Tex. Feb. 8, 2012) (abating case while the appraisal goes forward); *Rice v. Certain Underwriters at Lloyds*, Civ. A. No. H-10-4660, 2011 WL 240421 (S.D. Tex. Jan. 21, 2011) (abating case until appraisal process is complete). There is no legal, contractual or case law support for an attempt to avoid the appraisal process.

16. If either party fails to comply with the appraisal clause, Plaintiff cannot recover under the Policy. Further, because the respective appraisal clauses are binding upon the respective parties, there can be no breach of contract action for failure to pay amounts in excess of the award. *Scottish Union &*

*National Ins. Co. v. Clancy*, 8 S.W. 630, 632 (Tex. 1888); *Waterhill Cos. Ltd. v. Great American Assurance Co.*, 2006 WL 696577, slip op. at *2 (S.D. Tex. March 16, 2006); *Brownlow v. United States Automobile Ass'n*, 2005 WL 608252 (Tex. App.—Corpus Christi 2005, pet. denied); *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. App.—Corpus Christi 2004, pet. denied); P*rovidence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 878 (Tex. App.—San Antonio 1994, no writ).

17. The combination of the appraisal clause and the "suit against us" clause entitles either party to abatement of the insured's action until the completion of the appraisal. *Vanguard Underwriters Ins. Co. v. Smith*, 999 S.W.2d 448, 449 (Tex. App.—Amarillo 1999, no pet) (the appraisal and no action clauses of the policy are unambiguous and enforceable, and the insureds could not sue before they complied with the appraisal clause).

18. The Policy provides a specific mechanism for resolution of disputes about the amount of loss.  That mechanism is appraisal, and it is binding on all parties.  As discussed by the courts in *Waterhill*, *Brownlow*, and *Breshears*, *supra*, if Defendant complies with the appraisal award, there can be no breach of contract, making Plaintiff's suit unnecessary.   Therefore, abatement of any further proceedings in this lawsuit pending completion of the appraisal process promotes judicial efficiency. *See Slavonic*, 308 S.W.3d at 565; *see also Butler v Prop. & Cas. Ins. Co. of Hartford*, Civ. A. No H-10-3613, 2011 WL 2174965 (S.D. Tex. June 3, 2011) (holding that abatement of the case pending appraisal is appropriate and "in the interest of the efficient and inexpensive administration of justice").

## IX.

## DAMAGES AND PRAYER

19. WHEREFORE, PREMISES CONSIDERED, Plaintiff herein, complains of Defendant and prays that Defendant be cited to appear and answer and that on a final trial on the merits, Plaintiff recover from Defendant the following:

    a.  Actual damages that Plaintiff has suffered as a result of Defendant refusing to participate in appraisal;

    b.  Actual damages and benefit of the bargain from Defendant's refusal to pay proper policy benefits;

    c.  Attorney fees that Plaintiff has incurred as a result of Defendant refusing to participate in appraisal; and

    d.  A court order requiring Defendant to participate in appraisal

## X.

## RESERVATION OF RIGHTS TO APPRAISAL PROCESS

20. Plaintiff has invoked appraisal prior to filing this lawsuit.

21. Furthermore, by filing this Petition Plaintiff again invokes appraisal and renews its requests for appraisal as further needed and maintains its rights to the appraisal process.

22. Plaintiff specifically reserve any rights to change, supplement, amend, and add or remove disputed items to present to the Appraisal Panel as these items are discovered during the appraisal process.

23. In the event the appraisers are unable to select an umpire during the time period allotted, Defendant is formally given notice that Plaintiff intends to ask this Court to select an *independent* umpire.

24. Defendant is given notice that this lawsuit is filed without any intent to waive any appraisal rights because this lawsuit is not relating the *amount* of loss.

25. More specifically, this is a lawsuit brought to prevent Defendant from continuing in its attempts to avoid participation in the appraisal process.

26. Plaintiff reserves all rights to seek any attorney fees and actual damages that Plaintiff incurred for having this Court compel the appraisal process.

## XI.

## PLAINTIFF MAKES 194 REQUESTS TO DEFENDANT

27. Plaintiff makes 194.2 requests to Defendant.

28. In addition to the content subject to disclosure under Rule 194.2, Plaintiff requests disclosure of all documents, electronic information, and tangible items that the Defendant has in its possession, custody, or control and may use to support Defendant's claims or defenses.

Respectfully Submitted,

**DICK LAW FIRM, PLLC**

Eric B. Dick, LL.M.
TBN: 24064316
FIN: 1082959
Dick Law Firm, PLLC
3701 Brookwoods Drive
Houston, Texas 77092
(832) 207-2007 Office
www.dicklawfirm.com
eric@dicklawfirm.com
**ATTORNEY FOR PLAINTIFF**

# EXHIBIT "A"
# PLAINTIFF'S FIRST SET OF INTERROGATORIES

## I.
## DEFINITIONS:

1. "You" or "Your" means the party responding to these requests.

2. "The Policy" means the insurance policy that is the basis of claims made against Defendant in this lawsuit.

3. "Your Counsel" means the attorney or attorneys who are representing or have represented you either with regard to the claim or in this lawsuit.

4. The Claim" means the insurance claim made the basis of the breach of contract claim made against Defendant in this lawsuit.

5. "Written Communication" means the conveyance of information by a writing, whether by letters, e-mails, memoranda, handwritten notes and/or faxes.

6. "Document" means letters, words or numbers or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic or electronic impulse, mechanical or electronic recording, or other form of data compilation. *See* Texas Rule of Evidence 1001(a). "Document" specifically includes information that exists in electronic or magnetic form.

7. "Witness Statement" means the statement of any person with knowledge of relevant facts, regardless of when the statement was made, and is a (1) written statement signed or otherwise adopted or approved in writing by the person making it, or (2) a stenographic, mechanical, electrical, or other type of recording of a witness's oral statement, or any substantially verbatim transcript of such recording. *See* Texas Rule of Civil Procedure 192.3(h).

8. "Date" means the exact date, month and year, if ascertainable, or, if not, the best available approximation.

## II.
## INSTRUCTIONS:

1. You are requested to produce photographs, video recordings and audio recordings that were created or stored electronically.

2. Pursuant to Rule 196.4, you are requested to produce electronic or magnetic data responsive to the Requests for Production below in tiff or pdf searchable format, including email, instant message and pdf forms of the documents.

# III.
# INTERROGATORIES

1. Identify the persons involved in the investigation and handling of Plaintiff's claim for insurance benefits arising from the claim subject of this suit, and include a brief description of the involvement of each person identified, their employer, and the date(s) of such involvement.

ANSWER:

2. If you performed any investigative steps in addition to what is reflected in the claims file, please generally describe those investigative steps conducted by you or any of your representatives with respect to the facts surrounding the circumstances of the subject loss. Identify the persons involved in each step.

ANSWER:

3. Identify by date, author, and result the reports generated as a result of your investigation.

ANSWER:

4. State the following concerning notice of claim and timing of payment:
   a. The date and manner in which you received notice of the claim
   b. The date and manner in which you acknowledged receipt of the claim
   c. The date and manner in which you commenced investigation of the claim
   d. The date and manner in which you requested from the claimant all items, statements, and forms that you reasonably believed, at the time, would be required from the claimant
   e. The date and manner in which you notified the claimant in writing of the acceptance or rejection of the claim

ANSWER:

5. Identify by date, amount and reason, the insurance payments made by you to the Plaintiff.

ANSWER:

6. Has Plaintiff's claim for insurance benefits been rejected or denied? If so, state the reasons for denying the claim.

ANSWER:

7. Do you contend that appraisal is improper in this matter?

ANSWER:

8. Do you contend that the Plaintiff has properly invoked appraisal?

9.  Do you contend that Defendant should not communicate to any umpire *ex parte*?

ANSWER:

10. What relationship do you have, if any, with any umpire that you or your appraiser has suggested?

ANSWER:

11. What relationship do you have, if any, of the umpire selected or appointed in this appraisal?

UNOFFICIAL COPY

<u>EXHIBIT "B"</u>
**<u>PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION</u>**

## I.
## DEFINITIONS:

1.  "You" or "Your" means the party responding to these requests.

2.  "The Policy" means the insurance policy that is the basis of claims made against Defendant in this lawsuit.

3.  "Your Counsel" means the attorney or attorneys who are representing or have represented you either with regard to the claim or in this lawsuit.

4.  The Claim" means the insurance claim made the basis of the breach of contract claim made against Defendant in this lawsuit.

5.  "Written Communication" means the conveyance of information by a writing, whether by letters, e-mails, memoranda, handwritten notes and/or faxes.

6.  "Document" means letters, words or numbers or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic or electronic impulse, mechanical or electronic recording, or other form of data compilation. *See* Texas Rule of Evidence 1001(a). "Document" specifically includes information that exists in electronic or magnetic form.

7.  "Witness Statement" means the statement of any person with knowledge of relevant facts, regardless of when the statement was made, and is a (1) written statement signed or otherwise adopted or approved in writing by the person making it, or (2) a stenographic, mechanical, electrical, or other type of recording of a witness's oral statement, or any substantially verbatim transcript of such recording. *See* Texas Rule of Civil Procedure 192.3(h).

8.  "Date" means the exact date, month and year, if ascertainable, or, if not, the best available approximation.

## II.
## INSTRUCTIONS:

1.  You are requested to produce photographs, video recordings and audio recordings that were created or stored electronically.

2.  Pursuant to Rule 196.4, you are requested to produce electronic or magnetic data responsive to the Requests for Production below in tiff or pdf searchable format, including email, instant message and pdf forms of the documents.

## PRODUCTION PROTOCOL RELATING TO
## ELECTRONICALLY STORED INFORMATION
## (ESI ATTENDANT TO DISCOVERY REQUESTS TO DEFENDANT)

1. "Information items" as used herein encompasses individual documents and records (including associated metadata) whether on paper or film, as discrete "files" stored electronically, optically, or magnetically or as a record within a database, archive, or container file. The term should be read broadly to include e-mails, messaging, word processed documents, digital presentations, and spreadsheets.

2. Consistent with Texas Rule of Civil Procedure 196.4, responsive electronically stored information (ESI) has been requested by Plaintiff in its native form; that is, in the form in which the information was customarily created, used, and stored by the native application employed by the producing party in the ordinary course of business. The producing party shall not produce in a format not requested and later assert that production as a basis of not producing in the requested format, except upon agreement by the parties prior to production or ordered by the Court. The parties are reminded of their obligation to confer and to make reasonable efforts to resolve disputes regarding production without court intervention. *See In re Weekly Homes, L.P.,* 295 S.W.3d 309 (Tex.2009); TEX. R. CIV. P. 192.4(b).

3. If it is infeasible or unduly burdensome to produce an item of responsive ESI in its native form, it may be produced in an agreed-upon near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure, or functionality as compared to the native form. Static image production formats serve as near-alternatives only for information items that are natively static images (i.e., photographs and scans). Any and all agreements between the parties on a non-native form of production shall occur prior to initial production and the agreements shall be in writing. If no agreement can be made between the parties, consistent with Texas Rule of Civil Procedure 196.4, Defendant(s) will object and file with the Court evidence that production in native or near-native form is unduly burdensome or requires extraordinary steps. In the event the Court determines that production in native or near-native format is infeasible, production shall be made in accordance with the instruction of this Protocol.

4. The table below supplies examples or agreed-upon native or near-native forms in which specific types of ESI should be produced:

| Source ESI | Native or Near Native Form or Forms Sought |
|---|---|
|  |  |
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect Documents | .WPD |
| Adobe Acrobat Documents | .PDF |

| Photographs | .JPG, .PDF |
|---|---|
| E-mail | Messages should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to |
| | the conventions set out in RFC 5322 (the internet e-mail standard).  For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced. For Lotus Notes mail, furnish .NSF files or convert to .PST. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the |
| | message and container(s) preserved and produced in a delimited text file. |
| | |

5. Absent the showing of need, a party shall only produce reports from databases that can be generated in the ordinary course of business (i.e., without specialized programming skills), and these shall be produced in a delimited electronic format preserving field and record structures and names. The parties will meet and confer prior to initial production regarding programming database productions as necessary.

6. Information items that are paper documents or that require redaction shall be produced in static image formats, e.g., single-page .TIF or multipage .PDF images. If an information item contains color, the producing party shall not produce the item in a form that does not display color. The full content of each document will be extracted by optical character recognition (OCR) or other suitable method to a searchable text file produced with the corresponding page image(s) or embedded within the image file.

7. Parties shall take reasonable steps to ensure that text extraction methods produce usable, accurate, and complete searchable text.

8. Individual information items requiring redaction shall (as feasible) be redacted natively or produced in .PDF format and redacted using the Adobe Acrobat redaction feature. Redactions shall not be accomplished in a manner that serves to downgrade the ability to electronically search the unredacted portions of the item. To the extent a producing party asserts that production in .PDF format and redaction using the Adobe Acrobat redaction feature is unfeasible, the parties are directed to confer in an attempt to resolve any dispute without Court intervention. If the dispute cannot be resolved between the parties, the manner of production can be brought before the Court consistent with TEX. R. CIV. P. 196.4.

9.  Upon a showing of need, a producing party shall make a reasonable effort to locate and produce the native counterpart(s) of any .PDF or .TIF document produced. The parties agree to meet and confer prior to initial production regarding production of any such documents. This provision shall not serve to require a producing party to reveal redacted content.

10. Except as set out in this Protocol, a party need not produce identical information items in more than one form and shall globally de-duplicate identical items across custodians using each document's unique MD5 hash value. The content, metadata, and utility of an information item shall all be considered in determining whether information items are identical, and items reflecting different information shall not be deemed identical.

11. Production should be made using appropriate electronic media of the producing party's choosing provided that the production media chosen not impose undue burden or expense upon a recipient. All productions should be encrypted for transmission to the receiving party. The producing party shall, contemporaneously with production, supply decryption credentials and passwords to the receiving party for all items produced in an encrypted or password-protected form.

12. Each information item produced shall be identified by naming the item to correspond to a Bates identifier according to the following protocol:

    - The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying the party making the production

    - The next nine (9) characters will be a unique, consecutive numeric value assigned to the time by the producing party. This value shall be padded with leading zeros as needed to preserve its length

    - The final five (5) characters are reserved to a sequence beginning with an underscore(_) followed by a four digit number reflecting pagination of the item when printed to a paper or converted to an image format for use in proceedings or when attached as exhibits to pleadings.

    - By way of example, a Microsoft Word document produced by Joe Johnson in its native form might be named: JJSN000000123.docx. Were the document printed out for use in deposition, page six of the printed item must be embossed with the unique identifier JJSN000000123_0006.

13. Information items designated Confidential may, at the Producing Party's option:

    - Be separately produced on electronic production media prominently labeled confidential to comply with a Protective Order, if applicable.

    - When any item so designated is converted to a printed format for any reason or

imaged format for use in any submission or proceeding, the printout or page image shall bear be labeled confidential on each page in a clear and conspicuous manner, but not so as to obscure content.

14. Producing party shall furnish a delimited load file supplying the metadata field values listed below for each information item produced (to the extent the values exist and as applicable)

**FIELD**

BeginBates

EndBates

BeginAttach

EndAttach

Custodian/Source

Source File Name

Source File Path

From/Author

To

CC

BCC

Date Sent

Time Sent

Subject/Title

Last Modified Date

Last Modified Time

Document Type

Redacted Flag (yes/no)

Hidden Content/Embedded Objects Flag (yes/no)

Confidential flag (yes/no)

MD5Hash value

Hash De-Duplicated Instances (by full path)

15. Each production should include a cross-reference load file that correlates the various files, images, metadata field values and searchable text produced.

16. Parties shall respond to each request for production by listing the Bates numbers/ranges or responsive documents produced, and where an information item responsive to these discovery requests has been withheld or redacted on a claim that it is privileged, the producing party shall furnish a privilege log in accordance with Texas Rule of Civil Procedure 193.3.

## III.
## REQUEST FOR PRODUCTION OF DOCUMENTS

1. The claim files from the home, regional, local offices, and third party adjusters/adjusting firms regarding the claim that is the subject of this matter, including copies of the file jackets, "field" files and notes, and drafts of documents contained in the file.

RESPONSE:

2. If you seek to recover attorney's fees in this lawsuit, please produce your attorney fee agreement, your attorney fee statements and invoices, any time-keeping records kept by you or your attorney, and your checks for payment of attorney's fees or expenses.

RESPONSE:

3. The underwriting files referring or relating in any way to the policy at issue in this action, including the file folders in which the underwriting documents are kept and drafts of all documents in the file.

RESPONSE:

4. A certified copy of the insurance policy pertaining to the claims involved in this suit.

RESPONSE:

5. For the last two years, your written procedures or policies (including document(s) maintained in electronic form) that pertain to the handling of claims in Texas.

RESPONSE:

6. Contracts between you and the appraiser hired by you in this matter.

RESPONSE:

7. The emails, instant messages, and internal correspondence pertaining to Plaintiff's underlying claim.

RESPONSE:

8. The Plaintiff's file from the office of their insurance agent.

RESPONSE:

9. The documents reflecting reserves applied to the subject claim.

RESPONSE:

10. For the past three years, the portions of the personnel file of the adjuster(s) involved in handling Plaintiff's claim that pertain to disciplinary actions associated with claims handling, and performance under a bonus or incentive plan.

RESPONSE:

11. For the last three years, the managerial bonus or incentive plan for managers responsible for claims.

RESPONSE:

12. The Complaint Log required to be kept by you for complaints in Texas filed over the past three years.

RESPONSE:

13. As relating to this underlying lawsuit, produce the responses, including all documents you have received, to all requests you have made for Deposition by Written Questions.

RESPONSE:

14. If you are requesting Plaintiff pay for your costs and/or expenses incurred as a result of this litigation, produce all invoices, statements, payment vouchers, payment records, checks, and proof of payment of all costs and/or expenses that you are claiming Plaintiff should be responsible for.

RESPONSE:

15. Your preferred umpire list.

RESPONSE:

**EXHIBIT "C"**
**PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION**

**I.**
**DEFINITIONS:**

1. "You" or "Your" means the party responding to these requests.

2. "The Policy" means the insurance policy that is the basis of claims made against DEFENDANT in this lawsuit.

3. "Insured Location" means the real property at the location described in the Policy declarations.

4. "Dwelling" means the dwelling located at the Insured Location at the time of the claim subject of this suit.

5. "Other Structures" means any structures located at the Insured Location during the claim subject of this suit that are set apart from the Dwelling by a clear space, including those connected only by a fence, utility line, or similar connection.

6. "Other Damages" means debris removal, temporary repairs, tree and shrub removal, personal property removal and storage, loss of use and additional living expenses.

7. "Personal Property" means any or all of the personal property and business personal property that is the subject of the claims made against DEFENDANT in this lawsuit.

8. "Your Counsel" means the attorney or attorneys who are representing or have represented you either with regard to the claim or in this lawsuit.

9. "The Claim" means the insurance claim made the basis of the breach of contract claim made against DEFENDANT in this lawsuit.

10. "Written Communication" means the conveyance of information by a writing, whether by letters, e-mails, memoranda, handwritten notes and/or faxes.

11. "Document" means letters, words or numbers or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic or electronic impulse, mechanical or electronic recording, or other form of data compilation. *See* Texas Rule of Evidence 1001(a). "Document" specifically includes information that exists in electronic or magnetic form.

12. "Witness Statement" means the statement of any person with knowledge of relevant facts, regardless of when the statement was made, and is a (1) written statement signed or otherwise adopted or approved in writing by the person making it, or (2) a stenographic, mechanical, electrical, or other type of recording of a witness's oral statement, or any substantially verbatim transcript of such recording. *See* Texas Rule of Civil Procedure 192.3(h).

13. "Date" means the exact date, month and year, if ascertainable, or, if not, the best available approximation.

## II.
## INSTRUCTIONS:

PLAINTIFF serves these requests for admissions on DEFENDANT, as allowed by Texas Rule of Civil Procedure 198.

## III.
## REQUESTS FOR ADMISSION

1.     PLAINTIFF has invoked the appraisal.

ANSWER:

2.     DEFENDANT has a preferred list of umpires.

ANSWER:

3.     PLAINTIFF has not waived its rights to appraisal.

ANSWER:

4.     DEFENDANT has refused to participate in appraisal.

ANSWER:

5.     PLAINTIFF has demanded appraisal prior to filing this lawsuit.

ANSWER:

6.     The insurance policy at issue has an appraisal provision.

ANSWER:

7.     DEFENDANT is not seeking for PLAINTIFF to pay for DEFENDANT'S attorney fees.

ANSWER:

8.     DEFENDANT is not seeking for PLAINTIFF to pay for DEFENDANT'S costs associated with this lawsuit.

ANSWER:

**Exhibit "D"**
**PLAINTIFF'S DESIGNATION OF EXPERT WITNESSES**

NOW COMES, Plaintiff who files this, it's Designation of Expert Witnesses, and designates the following expert witnesses, one or more of whom may testify at trial:

**I.**

Plaintiff may call the following experts who are not retained:

1. Richard Gadrow
   30719 Meadow Edge Drive
   Magnolia, Texas 77354
   *General Contractor/Estimator*

The above-named witnesses may be called to testify as property experts with regard to the nature, existence of damage, loss cause (ie: hail, storm, etc), and value of Plaintiff's property and similar property. He may also offer testimony concerning the estimates and reports prepared by individuals utilized by Plaintiff in connection with their claim.

Said expert will base opinions on his respective training, education, experience, and review of the reports, estimates, and data, and other documents previously produced or to be produced in this case and each respective inspection of said property. His estimates will be supplemented and are incorporated by reference.

He is an estimator who is expected to testify regarding his investigation and handling of Plaintiff's claim, including the cause, origin, scope of damage and costs of repair. He will testify that he properly identified and estimated the scope and amount of damage made the basis of Plaintiff's claim subject to this lawsuit.

His opinions are within his claim report, deposition, estimate and claim correspondence – if any. His mental impressions and opinions are based on his training, experience, inspection and personal knowledge of his investigation and handling of the claim.

His is expected to opine the following: (1) the insured location sustained covered wind and/or hail damage during the effective policy period and the proper scope of repairs to address the aforementioned damages is reflected in the estimate previously produced or to be produced ; (2) evidence of covered damages warranting replacement of the estimated damages was obvious and reasonably clear during his site inspection and an insurance carrier adjusting this claim reasonably and in good faith either knew or should have known to identify and accept coverage for the aforementioned reasonably clear damages; (3) to the extend Defendant failed to acknowledge and accept coverage for the aforementioned reasonably clear damage, Defendant adjusted this claim in bad faith; (4) Defendant did not fully indemnify the insured for his/her loss and he/she has not been paid to restore the insured's property back to pre-loss condition; and (5) the insured was underpaid for this claim and Defendant knew or should have known that its claim decision constituted an unfair denial because evidence of covered damages warranting further coverage at all times was reasonably clear during its claim investigation.

Plaintiff will supplement documents for a complete statement of this experts findings and

opinions, the investigation he performed herein, and the facts and data considered by him in forming those findings and opinions ⌊1⌋SEP.

His report and resume will be supplemented if not attached.

Additional information he used in making any opinions, if any, will be supplemented if not attached.

> *2.* Joseph Ward
> 4735 Galewood Laned
> Beaumont, Texas 77706
> *Appraiser*

The above-named witnesses may be called to testify as property experts with regard to the nature, existence of damage, loss cause (ie: hail, storm, etc), and value of Plaintiff's property and similar property. He may also offer testimony concerning the estimates and reports prepared by individuals utilized by Plaintiff in connection with their claim.

Said expert will base opinions on his respective training, education, experience, and review of the reports, estimates, and data, and other documents previously produced or to be produced in this case and each respective inspection of said property. His estimates will be supplemented and are incorporated by reference.

He is an appraiser who is expected to testify regarding his investigation and handling of Plaintiff's claim, including the cause, origin, scope of damage and costs of repair. He will testify that he properly identified and estimated the scope and amount of damage made the basis of Plaintiff's claim subject to this lawsuit.

His opinions are within his claim report, deposition, estimate and claim correspondence – if any. His mental impressions and opinions are based on his training, experience, inspection and personal knowledge of his investigation and handling of the claim.

Plaintiff will supplement documents for a complete statement of this experts findings and opinions, the investigation he performed herein, and the facts and data considered by him in forming those findings and opinions ⌊1⌋SEP.

His report and resume will be supplemented if not attached.

Additional information he used in making any opinions, if any, will be supplemented if not attached.

> 3. Robert W. Von Dohlen
> 112 West 4th Street
> Houston, Texas 77007
> *Bad Faith Expert*

Said expert will base opinions on his respective training, education, experience, and review of the reports, insurance application, claim file, and data, and other documents previously produced

or to be produced in this case.

The above-named witnesses may be called to testify as insurance professional with regard to what a reasonable and prudent insurance adjuster and/or insurance company would have done in processing the insurance claim subject to this lawsuit. More so, what actions taken by an insurance company and its agents constitute good faith and/or bad faith. Said expert will base opinions on their respective training, education, experience, and review of the insurance policy application, data, and other documents previously produced or to be produced in this case.

He is a licensed attorney and licensed adjuster who is expected to testify regarding his investigation and Defendant's handling of Plaintiff's claim. It is expected that he will testify that the Defendant did not exercise good faith while adjusting Plaintiff's claim.

He will testify that it is his experience that an insurance company while acting in good faith will look for ways that an insurance policy will pay benefits. Basically, he will testify that it is common practice for insurance companies to give policy holders the benefit of the doubt. His opinions are that the underlying claim was handled in bad faith because Defendant was looking for ways to avoid paying policy benefits. More specifically, that a sign of an insurance company acting in bad faith is when they give little to no weight as to the facts and circumstances as depicted by the insured. Finally, he will testify that the insurance carrier participated in appraisal in bad faith.

His opinions are within his claim report, deposition, and claim correspondence – if any. His mental impressions and opinions are based on his training, experience, inspection and personal knowledge of his investigation and reviewing the handling of the claim.

The above-named witnesses may be also called to testify as insurance professional and legal expert with regard to what constitutes a valid defense of fraud. More specifically, he will testify that the Defendant would be incorrect is claiming fraud because there is a lack of materiality and/or there no material evidence showing intent to deceive on behalf of the insured.

Plaintiff will supplement documents for a complete statement of his findings and opinions, the investigation he performed herein, and the facts and data considered by him in forming those findings and opinions.

The above-named witnesses may be called to testify as property experts with regard to the nature, existence of damage, cause, and value of Plaintiff's property and similar property. He may also offer testimony concerning the estimates and reports prepared by individuals utilized by Plaintiff in connection with their claim. He may also provide an opinion as to the causation of damages. Said experts will base opinions on their respective training, education, experience, and review of the reports, estimates, and data, and other documents previously produced or to be produced in this case and each respective inspection of said property. His estimates will be supplemented and are incorporated by reference.

His report and resume, if any, will be supplemented if not attached.

Additional information he used in making any opinions will be supplemented

4.  Pooya Koohbanani
    1001 Belleview Street, Suite 308
    Dallas, Texas 75215

The above-named witnesses may be called to testify with regard to the causation, nature, existence of damage at the insured property Said expert will base opinions on their respective training, education, experience, and review of the reports, and data, and other documents previously produced or to be produced in this case.  His reports, if not attached, with be produced and are incorporated by reference. His resume is available at the above indicated website.

His opinions are within his claim report, deposition, estimate and claim correspondence – if any. His mental impressions and opinions are based on his training, experience, inspection and personal knowledge of his investigation and handling of the claim.

Pooya M. Koohbanani is an engineer who is expected to opine as follows: an event (ie: hail or high winds) occurred at the insured location during the policy period and said event caused damaged to the insured property.

Plaintiff will supplement documents, if not attached, for a complete statement of Pooya M. Koohbanani's findings and opinions, the investigation he performed herein, and the facts and data considered by him in forming those findings and opinions.

Plaintiff may call the following experts who are retained:

5.  Eric Dick, LL.M.
    Rogelio Garcia (of Counsel)
    Chris Carmona (of Counsel)
    Dick Law Firm, PLLC
    3701 Brookwoods Dr.
    Houston, Texas 77092
    (832) 207-2007
    (713) 893-6931 Fax
    www.dicklawfirm.com

The above attorneys may be called by plaintiff to testify as an expert witness at the trial of this action, pursuant to Rule 702, Tex. R. Evid., on topics of reasonable and necessary attorney's fees incurred or recoverable by any party to this lawsuit.  Such expert is familiar with the average and reasonable attorney fees usually and customarily charged by attorneys in various Texas Counties for the handling of similar claims.  The expert identified are aware of the various necessary efforts expended in prosecuting this suit on behalf of plaintiff, and the reasonable charges therefore, and are expected to testify that the attorney's fees incurred by plaintiff in its pursuit of this matter are reasonable and necessary, and that the attorney's fees incurred by defendant may not be reasonable or necessary.

Information regarding Eric Dick:

| | |
|---|---|
| College: | Thomas M. Cooley |
| Degree: | Juris Doctorate |
| Distinctions: | Cum Laude |
| College: | University of Alabama |
| Degree: | Masters of Laws and Letters |

Notable information:  Interned for Michigan's Attorney General in the Tobacco and Special Litigation Division and worked on the Master Settlement Agreement which is the largest civil settlement in United States history. Named by Super Lawyers as a Rising Star.

Mr Dick's report and resume, if not attached, will be provided to Defendant and are incorporated by reference.

The mental impressions and opinions are that fees and costs associated with this litigation are reasonable, necessary and customary in this county and surrounding counties.  A reasonable fee to be charged in this case is $450.00 per hour in consideration with several factors, including:

- The nature and complexity of the case;
- The nature of the services provided by counsel;
- The time required for trial;
- The amount of money involved;
- The client's interest that is at stake;
- The responsibility imposed on counsel;
- The skill and expertise involved; and
- Those matters enumerated in State Bar Rule 1.04(b) (1)-(8), which are:
  - The time and labor required, the novelty and difficulty of the questions presented and the skill required to perform the legal services properly;
  - The likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer;
  - The fee customarily charged in the locality for similar legal services;
  - The amount involved and the results obtained;
  - The time limitations imposed by the client or the circumstances;
  - The nature and length of the professional relationship with the client;
- The experience, reputation and ability of the lawyer or lawyers performing the service.

Plaintiff may call the following expert who is not retained:

6. Greg Degeyter
   9898 Bissonnet, Suite 620
   Houston, Texas 77036
   *Meteorologist*
   (713) 505-0524

The above-named witnesses may be called to testify as weather events with regard to the nature, existence of wind and hail at the insured property Said expert will base opinions on their respective training, education, experience, and review of the reports, and data, and other documents previously produced or to be produced in this case.  His reports, if not attached, with be produced and are incorporated by reference.

Greg Degeyter is a meteorologist who is expected to testify that hail or high winds occurred at the insured location during the policy period.

Greg Degeyter's opinions are within his claim report, deposition, estimate and claim correspondence – if any. His mental impressions and opinions are based on his training, experience, inspection and personal knowledge of his investigation and handling of the claim.

Plaintiff will supplement documents, if not attached, for a complete statement of Greg Degeyter findings and opinions, the investigation he performed herein, and the facts and data considered by him in forming those findings and opinions.

## II.

Plaintiff reserves the right to supplement this designation further within the time limitations imposed by the Court and/or by any alterations of same by subsequent Court order and/or by agreement of the parties and/or pursuant to the Texas Rules of Civil Procedure and/or the Texas Rules of Evidence.

## III.

Plaintiff reserves the right to withdraw the designation of any expert witness and to aver positively that such previously designated expert will not be called as an expert witness at trial and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

## IV.

Plaintiff reserves the right to elicit by cross-examination the opinion testimony of experts designated and called by other parties to this suit.

## V.

Plaintiff reserves the right to call undesignated expert witnesses for rebuttal or impeachment, whose identities and testimony cannot reasonably be foreseen until Defendants have named their experts or presented its evidence at trial.

## VI.

Plaintiff reserves the right to elicit any expert testimony and/or lay opinion testimony that would assist the jury in determining material issues of fact and that would not violate the Texas Rules of Civil Procedure and/or the Texas Rules of Evidence.

## VII.

Plaintiff hereby designates and may call to testify as adverse witnesses any and all witnesses designated by Defendants hereto and any and all expert witnesses designated by any party, whether or not such person or entity is still a party hereto at the time of trial.

## VIII.

Plaintiff reserves all additional rights he may have with regard to expert witnesses and testimony under the Texas Rules of Civil Procedure, the Texas Rules of Evidence, statutes, case law, any orders issued by this Court or leave granted therefrom.

Respectfully Submitted,

Eric B. Dick, LL.M.
TBN: 24064316
FIN: 1082959
DICK LAW FIRM, PLLC
3701 Brookwoods Drive
Houston, Texas 77092
(832) 207-2007 Office
www.dicklawfirm.com
eric@dicklawfirm.com
**ATTORNEY FOR PLAINTIFF**

UNOFFICIAL COPY

CAUSE NO. _____

| | | |
|---|---|---|
| PHILIP NIGRO, | § | IN THE COUNTY CIVIL COURT |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | AT LAW NUMBER _____ |
| | § | |
| UNITED PROPERTY AND | § | |
| CASUALTY INSURANCE COMPANY, | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

**EXHIBIT E**
**PLAINTIFF'S BINDING STIPULATION**

COMES NOW Plaintiff by and through his/her attorney, who stipulates as follows:

1.　　　The total sum or value in controversy in this cause of action does not exceed $75,000.00 exclusive of interest and costs.

2.　　　The total damages sought by the Plaintiff in this cause of action does not exceed $75,000.00 exclusive of interest and costs.

3.　　　Neither Plaintiff nor his/her attorney will accept an amount that exceeds $75,000.00 exclusive of interest and costs.

4.　　　Neither Plaintiff nor his/her attorney will amend his/her petition after one year to plead an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

5.　　　Neither Plaintiff nor his/her attorney will authorize anyone on his/her behalf or his/her future heirs and/or assigns, to make such an amendment.

6.　　　Plaintiff and his/her attorney understand and agree that Plaintiff's recovery is limited to an amount less than $75,000.00 exclusive of interest and costs.

Signed on June 7, 2019

**DICK LAW FIRM, PLLC**

UNOFFICIAL COPY

Eric B. Dick, LL.M.
TBN: 24064316
FIN: 1082959
DICK LAW FIRM, PLLC
3701 Brookwoods Drive
Houston, Texas 77092
(832) 207-2007 Office
www.dicklawfirm.com
**ATTORNEY FOR PLAINTIFF**

2

6/7/2019 3:40 PM
Diane Trautman
County Clerk
Harris County

CIVIL CASE INFORMATION SHEET

**1135271**

CAUSE NUMBER *(FOR CLERK USE ONLY):* _____   COURT *(FOR CLERK USE ONLY):* _____

STYLED    PHILIP NIGRO V. UNITED PROPERTY AND CASUALTY INSURANCE COMPANY _____

*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| Name: ERIC B. DICK DICK LAW FIRM, ATTORNEY  Email: dickdidit911@gmail.com | Plaintiff(s)/Petitioner(s): PHILIP NIGRO | ■ Attorney for Plaintiff/Petitioner ☐ *Pro Se* Plaintiff/Petitioner ☐ Title IV-D Agency ☐ Other: _____ |
| Address: 3701 BROOKWOODS DR.  Telephone: (832) 207-2007 | | Additional Parties in Child Support Case: |
| City/State/Zip: HOUSTON, TX 77092  Fax: (713) 893-6931 | Defendant(s)/Respondent(s): UNITED PROPERTY AND CASUALTY INSURANCE COMPANY | Custodial Parent: Non-Custodial Parent: |
| Signature:  State Bar No: 24064316 | [Attach additional page as necessary to list all parties] | Presumed Father: |

**2. Indicate case type, or identify the most important issue in the case *(select only 1):***

| Civil | | | | Family Law |
|---|---|---|---|---|

| Contract | Injury or Damage | Real Property | Marriage Relationship | Post-judgment Actions (non-Title IV-D) |
|---|---|---|---|---|
| *Debt/Contract*  ■ Consumer/DTPA  ☐ Debt/Contract  ☐ Fraud/Misrepresentation  ☐ Other Debt/Contract: ___  *Foreclosure*  ☐ Home Equity—Expedited  ☐ Other Foreclosure  ☐ Franchise  ☐ Insurance  ☐ Landlord/Tenant  ☐ Non-Competition  ☐ Partnership  ☐ Other Contract: ___ | ☐ Assault/Battery  ☐ Construction  ☐ Defamation  *Malpractice*  ☐ Accounting  ☐ Legal  ☐ Medical  ☐ Other Professional  Liability:  ___  ☐ Motor Vehicle Accident  ☐ Premises  *Product Liability*  ☐ Asbestos/Silica  ☐ Other Product Liability  List Product: ___  ☐ Other Injury or Damage: ___ | ☐ Eminent Domain/  Condemnation  ☐ Partition  ☐ Quiet Title  ☐ Trespass to Try Title  ☐ Other Property: ___  **Related to Criminal Matters**  ☐ Expunction  ☐ Judgment Nisi  ☐ Non-Disclosure  ☐ Seizure/Forfeiture  ☐ Writ of Habeas Corpus—  Pre-indictment  ☐ Other: ___ | ☐ Annulment  ☐ Declare Marriage Void  *Divorce*  ☐ With Children  ☐ No Children  **Other Family Law**  ☐ Enforce Foreign  Judgment  ☐ Habeas Corpus  ☐ Name Change  ☐ Protective Order  ☐ Removal of Disabilities  of Minority  ☐ Other: ___ | ☐ Enforcement  ☐ Modification—Custody  ☐ Modification—Other  **Title IV-D**  ☐ Enforcement/Modification  ☐ Paternity  ☐ Reciprocals (UIFSA)  ☐ Support Order  **Parent-Child Relationship**  ☐ Adoption/Adoption with  Termination  ☐ Child Protection  ☐ Child Support  ☐ Custody or Visitation  ☐ Gestational Parenting  ☐ Grandparent Access  ☐ Parentage/Paternity  ☐ Termination of Parental  Rights  ☐ Other Parent-Child: ___ |

| Employment | Other Civil | |
|---|---|---|
| ☐ Discrimination  ☐ Retaliation  ☐ Termination  ☐ Workers' Compensation  ☐ Other Employment: ___ | ☐ Administrative Appeal  ☐ Antitrust/Unfair  Competition  ☐ Code Violations  ☐ Foreign Judgment  ☐ Intellectual Property | ☐ Lawyer Discipline  ☐ Perpetuate Testimony  ☐ Securities/Stock  ☐ Tortious Interference  ☐ Other: ___ |

| Tax | Probate & Mental Health | |
|---|---|---|
| ☐ Tax Appraisal  ☐ Tax Delinquency  ☐ Other Tax | *Probate/Wills/Intestate Administration*  ☐ Dependent Administration  ☐ Independent Administration  ☐ Other Estate Proceedings | ☐ Guardianship—Adult  ☐ Guardianship—Minor  ☐ Mental Health  ☐ Other: ___ |

**3. Indicate procedure or remedy, if applicable *(may select more than 1):***

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court  ☐ Arbitration-related  ☐ Attachment  ☐ Bill of Review  ☐ Certiorari  ☐ Class Action | ☐ Declaratory Judgment  ☐ Garnishment  ☐ Interpleader  ☐ License  ☐ Mandamus  ☐ Post-judgment | ☐ Prejudgment Remedy  ☐ Protective Order  ☐ Receiver  ☐ Sequestration  ☐ Temporary Restraining Order/Injunction  ☐ Turnover |

**4. Indicate damages sought *(do not select if it is a family law case):***

☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100, 000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☐ Over $1,000,000

Rev 2/13

UNOFFICIAL COPY



# OFFICE OF DIANE TRAUTMAN
## COUNTY CLERK, HARRIS COUNTY, TEXAS
### COUNTY CIVIL COURTS DEPARTMENT

**Docket Number: 1135271**
**Receipt Number:     Date:     Sheriff/Constable Fee: $**

PHILIP NIGRO
**Plaintiff**
**VS.**
UNITED PROPERTY & CASUALTY INSURANCE
COMPANY
**Defendant**

In The County Civil Court at Law No. 2
201 Caroline #517
Houston, Tx 77002

## THE STATE OF TEXAS
### ORIGINAL  PETITION  CITATION

To:     UNITED PROPERTY & CASUALTY INSURANCE COMPANY
CT CORPORATION SYSTEM - 1999 BRYAN STREET STE 900
DALLAS TX  75201-3136

Attached is a copy of petition.
This instrument was filed on the **7th day of June, 2019,** in the above cited cause number and court. The instrument
attached describes the claim against you.

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the county
clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.

Issued and given under my hand and the seal of said court, at Houston, Texas, on this 24th day of July, 2019

(Seal)

Diane Trautman, County Clerk
County Civil Court at Law No. 2
201 Caroline, Suite 300
Harris County, Texas

_____

Alba Fraire
Deputy County Clerk

Requested
By:

ERIC DICK
3701 BROOKWOODS DRIVE
HOUSTON TX  77092

1135271



# OFFICE OF DIANE TRAUTMAN
## COUNTY CLERK, HARRIS COUNTY, TEXAS
### COUNTY CIVIL COURTS DEPARTMENT

**Docket Number: 1135271**
**Receipt Number:      Date:    Sheriff/Constable Fee: $**

PHILIP NIGRO
**Plaintiff**
**VS.**
UNITED PROPERTY & CASUALTY INSURANCE
COMPANY
**Defendant**

In The County Civil Court at Law No. 2
201 Caroline #517
Houston, Tx 77002

### THE STATE OF TEXAS
### ORIGINAL  PETITION  CITATION

To:     UNITED PROPERTY & CASUALTY INSURANCE COMPANY
        CT CORPORATION SYSTEM - 1999 BRYAN STREET STE 900
        DALLAS TX  75201-3136

Attached is a copy of petition.
This instrument was filed on **7th day of June, 2019,** in the above cited cause number and court. The instrument
attached describes the claim against you.

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the county
clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.

Issued and given under my hand and the seal of said court, at Houston, Texas, on this 24th day of July, 2019

(Seal)

Diane Trautman, County Clerk
County Civil Court at Law No. 2
201 Caroline, Suite 300
Harris County, Texas

_____

Alba Fraire
Deputy County Clerk

Requested      ERIC DICK
By:            3701 BROOKWOODS DRIVE
               HOUSTON TX  77092

**OFFICER'S RETURN**

Came to hand on ___August 23, 2019___, at ___8:00___ o'clock A.M. and

executed in ___Dallas___ County, Texas, by delivering to each of the within named Defendants, in person, a true copy of this Citation together with the accompanying copy of the Plaintiff's petition, at the following time and places to-wit:

| NAME | DATE | | | TIME | PLACE OR ADDRESS OF SERVICE |
|------|------|---|---|------|------------------------------|
| | Month | Day | Year | Hour / Min. - AM/PM | |
| United Property & Casualty Ins.Co. | 8 | 30 | 2019 | 9:48 Am | 1999 Bryan St, STE 900 |
| C/o CT Corp. System | | | | | Dallas, Texas 75201-3136 |
| | | | | | |

and not executed as to the Defendant _____

the diligence used in finding said Defendant , being _____

_____

and the cause of failure to execute this process is: _____

and the information received as to the whereabouts of the said Defendant , being: _____

_____

_____ (Sheriff)

(Authorized Person) _____ (Constable)

Sworn to and subscribed before me this ___5th___ day ___September___ ___Harris___ County, Texas

of ___Sophia Navarro___                    By ___Tim Mullinax___

(Notary Public)                              Tim Mullinax Process Server #9993 Exp: 12/31/2020 , Deputy

SOPHIA NAVARRO
Notary ID #124974162
My Commission Expires
March 30, 2021

**RETURN FOR NOTICE TO SERVE NON-RESIDENT DEFENDANT**

STATE OF _____ §

COUNTY OF _____ §

Before me, the undersigned authority, personally appeared _____

a person competent to make oath, and who by me being duly sworn, deposes and says; that this notice came to hand on _____

_____, at _____ o'clock A.M./P.M., and executed by delivering

to defendant, _____, in person, at _____

in _____, County _____, State of _____

_____, on _____, at _____ o'clock

A.M./P.M., a true copy of the notice, with a copy of plaintiff's petition attached thereto.  He further says that he is in no manner interested in this Suit.

Sworn to and subscribed before me, _____

_____

_____ (Sheriff)

_____ (Constable)

_____, County,

State of _____

By _____ Deputy

Form No. H-01-28 (Rev. 08/01/2011)

TIM MULLINAX PRIVATE PROCESS SERVER
4325 TULSA RD.
HOUSTON, TX 77092
(713) 815-1054

## RETURN FOR CERTIFIED MAIL

Received this CITATION, cause # _____1135271_____

on the _23rd_ day of _August_, 201_9_, at _8:00_ am/pm and was Delivered at

Address _1999 Bryan St., STE 900 Dallas, Tx 75201-3136_

by mailing to _United Property & Casualty Ins. Co. C/O CT_

_Corporation System_

It was DELIVERED on the _30th_ day of _August_, 2019.

BY CERTIFIED MAIL and is being returned to COURT "EXECUTED".

_____
Process Server PSC-9993; EXP 12/31/2020
Tim L. Mullinax

SIGNED under oath before me on the _5th_ day of _September_ 201_9_

SOPHIA NAVARRO
Notary ID #124974162
My Commission Expires
March 30, 2021

_____
Notary Public, State of Texas

**ALERT: MAIL SERVICE IS DISRUPTED IN SOME PARTS OF THE SOUTHEAST U.S. DUE TO HUR...**

# USPS Tracking®

**FAQs ›** **(https://www.usps.com/faqs/uspstracking-faqs.htm)**

## Track Another Package +

**Tracking Number:** 70163010000009680393          Remove ✕

Your item was delivered at 9:48 am on August 30, 2019 in DALLAS, TX 75201.

## ✓ Delivered

August 30, 2019 at 9:48 am
Delivered
DALLAS, TX 75201

**Get Updates** ⌄

Text & Ema...                                                              ⌄

Tracking Hi...                                                             ⌄

Product Inf...                                                            ⌄

Feedback

UNOFFICIAL COPY

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Terri Thongsavat_  ☐ Agent ☐ Addressee<br>B. Received by (Printed Name) Terri Thongsavat   C. Date of Delivery AUG 3 0 2019 |
| 1. Article Addressed to:<br><br>United Property & Casualty Ins. Co.<br>C/O Corp. System<br>1999 Bryan St., STE 900<br>Dallas Tx 75201-3136 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 2598 6336 4491 64 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number (Transfer from service label)<br>7016 3010 0000 0968 0393 | ☐ Mail<br>☐ Mail Restricted Delivery |
| PS Form 3811, July 2015 PSN 7530-02-000-9053 | Domestic Return Receipt |

Go to our FAQs section to find answers to your tracking questions.

**FAQs (https://www.usps.com/faqs/uspstracking-faqs.htm)**

Case 4:19-cv-03744   Document 1-2   Filed on 09/30/19 in TXSD   Page 42 of 62
1135271
9/23/2019 12:34 PM
Diane Trautman
County Clerk
Harris County
**Harris County - County Civil Court at Law No. 2**

**CAUSE NO: 1135271**

| | | |
|---|---|---|
| **PHILIP NIGRO** | § | **IN THE COUNTY COURT AT LAW** |
| | § | |
| **VS.** | § | **NO. 2** |
| | § | |
| **UNITED PROPERTY & CASUALTY** | § | |
| **INSURANCE COMPANY** | § | **HARRIS COUNTY, TEXAS** |

<u>**DEFENDANT UNITED PROPERTY & CASUALTY INSURANCE COMPANY'S ORIGINAL ANSWER TO PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, United Property & Casualty Insurance Company ("United Property"), Defendant in the above-entitled and numbered cause and files this, its Original Answer to Plaintiff's Original Petition and Request for Disclosure and would respectfully show unto the Court the following:

**I.      GENERAL DENIAL**

1.1      United Property & Casualty Insurance Company asserts a general denial as is authorized by Rule 92 of the Texas Rules of Civil Procedure, and requests that Plaintiff be required to prove his charges and allegations against United Property & Casualty Insurance Company by a preponderance of the evidence as is required by the Constitution and law of the State of Texas.

**II.      DENIAL OF CONDITIONS PRECEDENT**

2.1      The Policy contains certain conditions that have not been satisfied that bar Plaintiff's recovery, in whole or in part.

**A.      NO ACTION CLAUSE**

2.2      The Policy specifically provides, as conditions precedent to property loss coverage, that no suit can be brought against United Property unless certain Policy provisions

have been complied with, including, but not limited to protection of the insured property, cooperation in the claim, show the damaged property as often as reasonably required, and a signed and sworn proof of loss, as defined by the Policy.

2.3     Plaintiff's failure to comply with these provisions constitutes a breach of the "no action" clause. Accordingly, Plaintiff is barred from proceeding with his lawsuit and from recovering damages, attorneys' fees, interest or other amounts from United Property.

**B.     LOSS DURING THE POLICY PERIOD**

2.4     The Policy does not cover damages which occurred prior to Policy inception regardless of whether such damages were apparent at the time of the inception of the Policy or discovered at a later date. To the extent that any part of the loss which Plaintiff complains did not occur during the applicable policy period, the Policy provides no coverage for same.

2.5     The Policy does not cover claims or damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to Policy inception.

**III.     <u>AFFIRMATIVE DEFENSES</u>**

3.1     United Property & Casualty Insurance Company denies that the required conditions precedent were performed and/or occurred. Plaintiff cannot recover against United Property, in whole or in part, for any of the causes of action alleged in Plaintiff's Original Petition because the conditions precedent to coverage under the Policy have not been satisfied.

3.2     The Policy does not cover damages which occurred prior to Policy inception regardless of whether such damages were apparent at the time of the inception of the Policy or discovered at a later date. To the extent that any part of the loss to which Plaintiff's complain did not occur during the applicable policy period, the Policy provides no coverage for same.

3.3     The Policy does not cover claims or damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to Policy inception.

3.4     The damages allegedly sustained by Plaintiff may have been the result of actions or omissions of individuals over whom United Property had no control, including but not limited to Plaintiff, therefore, United Property is not liable to Plaintiff.

3.5     United Property issued a policy of insurance to Philip Nigro, and United Property adopts its terms, conditions and exclusions as if copied *in extenso*.

3.6     The Policy does not cover loss caused by wear and tear, marring, deterioration, mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself.

3.7     The Policy requires direct, physical loss. Specifically with regard to loss caused by windstorm or hail, the Policy does not cover loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3.8     The Policy does not cover loss caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

3.9     The Policy does not cover an abrupt falling down or caving in; loss of structural integrity, including separation of parts of the property in danger of falling down or caving in; or any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to an abrupt falling down or caving in or loss of structural integrity.

4851-7227-7413.1

3.10     United Property is entitled to any credits or set-offs for prior payments by United Property or other third parties.

3.11     To the extent that Plaintiff's damages are determined to be the result of a failure by Plaintiff to take reasonable steps to mitigate the loss, those damages are not recoverable.

3.12     To the extent that all statutory and policy requisites have not been satisfied, this suit is premature.

3.13     To the extent Plaintiff has failed to carry his burden to segregate the damage attributable solely to loss event referenced in the Original Petition, those damages are not recoverable.

## IV.     REQUEST FOR DISCLOSURE

Pursuant to Rule 194, Plaintiff is requested to disclose the information or material described in Rule 194.

## V.     PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendant, United Property & Casualty Insurance Company, respectfully prays that Plaintiff take nothing by his suit, that Defendant recovers costs, and for such other and further relief, both at law and in equity, to which United Property & Casualty Insurance Company may be justly entitled.

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP


By: /s/ Sarah R. Smith
    Sarah R. Smith
    Texas State Bar No. 24056346
    Sarah C. Plaisance
    Texas State Bar No. 24102361
    24 Greenway Plaza, Suite 1400
    Houston, Texas 77046
    Telephone: 713.659.6767
    Facsimile: 713.759.6830
    sarah.smith@lewisbrisbois.com
    sarah.plaisance@lewisbrisbois.com

    ATTORNEYS FOR DEFENDANT,
    UNITED PROPERTY & CASUALTY
    INSURANCE COMPANY


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above pleading has been forwarded pursuant to the Texas Rules of Civil Procedure on this 23rd day of September, 2019.

Eric B. Dick        *Via Eserve*
Dick Law Firm, PLLC
3701 Brookwoods Dr.
Houston, Texas 77092
eric@dicklawfirm.com
*Attorney for Plaintiff*


        */s/ Sarah R. Smith*
        Sarah R. Smith

Harris County - County Civil Court at Law No. 2

## CAUSE NO. 1135271

| | | |
|---|---|---|
| **PHILIP NIGRO,** | § | **IN THE COUNTY CIVIL COURT** |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **AT LAW NUMBER 2** |
| | § | |
| **UNITED PROPERTY & CASUALTY** | § | |
| **INSURANCE COMPANY,** | § | |
| *Defendant,* | § | |
| | § | **HARRIS COUNTY, TEXAS** |

### PLAINTIFF'S MOTION TO COMPEL APPRAISAL
### AND ABATEMENT

**COMES NOW** Plaintiff in the above-styled lawsuit and files this Motion to Compel Appraisal of Plaintiff's property damage claim as authorized by the insurance policy at issue in this case and abate the lawsuit pending completion of the appraisal process, and would respectfully show the Court as follows:

## I.
## FACTUAL BACKGROUND

1. This lawsuit arises out of a dispute over an insurance claim made by Plaintiff for damage to her property.

2. Defendant's policy provides for appraisal as a means for determining the amount of loss when the parties are unable to agree to the amount of loss.

3. Plaintiff timely invoked the appraisal clause of Defendant's policy.

4. To date, Defendant has not named its appraiser pursuant to the insurance agreement.

5. To date, Defendant has refused to participate in the appraisal process.

## II.
## OVERVIEW

6. The case should be abated and the parties should be compelled to complete the appraisal process.

7. This suit arises out of a disagreement over the amount of loss to Plaintiff's property.

8. The insurance policy contains an appraisal clause for resolution of this type of dispute. The appraisal clause requires the parties, upon written demand, to submit to the appraisal process when they fail to agree on the "amount of loss." Despite this contractual agreement, Defendant refuses to honor this appraisal clause.

9. The Supreme Court of Texas held in *State Farm Lloyds v. Johnson,* 290 S.W.3d 886 (Tex. 2009), that in every property damage claim, someone must determine the "amount of loss." An appraisal clause binds the parties to have the extent or amount of the loss determined in a particular way. Like any other contractual provision, appraisal clauses should be enforced. *Id.* at 895.

10. Texas courts have consistently enforced appraisal provisions with virtually no exception. *See In re Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d 404, 407 (Tex. 2011) (holding that appraisal clauses generally are enforceable, absent illegality or waiver); *In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 559 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

11. Completion of appraisal in accordance with Defendant's policy is a condition precedent to filing suit on the insurance contract. *Woodward v. Liberty Mut. Ins. Co.* No. 3:09-CV-0228-G, 2010 WL 1186323 *3 (N.D. Tex. Mar. 26, 2010). "When one party to an insurance contract properly invokes the contract's appraisal clause…a court should exercise its discretion to stay the suit pending completion of the appraisal." *Woodward,* 2010 WL 1186323 at *3; *see also In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 565 (Tex.

App.—Houston [14th Dist.] 2010, no pet.) ("[a] remedy to enforce a condition precedent in its policy is abatement of the case"); *see also United Neurology, PA v. Hartford Lloyd's Ins. Co.,* No. H-10-4248, 2012 WL 423417 (S.D. Tex. Feb. 8, 2012) (abating case while the appraisal goes forward); *Rice v. Certain Underwriters at Lloyds*, Civ. A. No. H-10-4660, 2011 WL 240421 (S.D. Tex. Jan. 21, 2011) (abating case until appraisal process is complete).

12. Here, Plaintiff timely invoked the appraisal provisions of its policy. Plaintiff requests that the court exercise its discretion to abate this case pending the completion of the appraisal process.

13. Furthermore, judicial economy is best served by staying this matter until such time as the appraisal process is complete. *See Slavonic,* 308 S.W.3d at 565; *see also Butler v. Prop. & Cas. Ins. Co. of Hartford,* Civ. A. No. H-10-3613, 2011 WL 2174965 (S.D. Tex. June 3, 2011) (holding that abatement of the case pending appraisal is appropriate and "in the interest of the efficient and inexpensive administration of justice"). Moving forward with discovery related to alleged breach of contract and extra-contractual causes of action when a condition precedent to the breach of contract claim has not been satisfied is a waste of the parties' and the Court's resources.

14. The purpose of appraisal is to determine the amount of loss and possibly resolve the case with "no attorneys, no lawsuit, no pleadings, and no hearings." *State Farm Lloyd's v. Johnson,* 290 S.W.3d 886, 894 (Tex. 2009) (noting that appraisals are less costly and faster than litigation, and often resolve disputes such as this one). Consistent with the purpose of appraisal, *i.e.*, to prevent or reduce litigation efforts and costs, Plaintiff requests the Court abate this lawsuit until the appraisal process is completed.

III.

## ARGUMENT & AUTHORITIES

15. Texas courts specifically enforce appraisal clauses in standard Texas policies and have routinely required insurers to participate in the appraisal process as contracted under their policies. *See Universal,* 345 S.W.3d at 412; *In re Allstate County Mut. Ins. Co.,* 85 S.W.3d 193, 196 n. 5 (Tex. 2002); *In re State Farm Lloyds,* 170 S.W.3d 629, 634-635 (Tex. App.— El Paso 2005, orig. proceeding); *Vanguard Underwriters Ins. Co. v. Smith,* 999 S.W.2d 448, 449 (Tex. App.—Amarillo, 1999, no pet.).

16. The Supreme Court of Texas has reaffirmed the mandatory nature and enforceability of appraisal clauses and noted that this is a principle that has been followed consistently since at least 1888. *Universal,* 345 S.W.3d at 406-07 (holding that appraisal clauses are generally enforceable, absent illegality or waiver); *Johnson,* 290 S.W.3d at 888-89 (citing *Scottish Union & Nat. Ins. Co. v. Clancy,* 8 S.W. 630 (Tex. 1888)); *see also In re Allstate,* 85 S.W.3d at 196.

17. In *Johnson,* the Texas Supreme Court affirmed the Dallas Court of Appeals holding that appraisal must still be enforced even if there is some underlying dispute because the parties still need to know the "amount of loss." *Johnson,* 290 S.W.3d at 895. The facts of *Johnson* are instructive. There, the insured made a claim under his State Farm Lloyds homeowners policy alleging the roof of the home had been damaged during a hail storm. State Farm Lloyds' adjuster concluded that hail caused only minimal damage to the ridgeline of the roof which fell below the policy's deductible. *Id.* Accordingly, no payment was made on the claim. The insured's contractor argued that hail had damaged the entire roof thus

4

mandating that the entire roof be replaced. *Id.* The Texas Supreme Court determined that the dispute over roof damage was properly subject to the policy's appraisal provision holding that "[a]ny appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages for everything else." *Id.* at 893. The application of *Johnson* to this case is clear; irrespective of the cause of the insured's claimed roof damage (old damage or new damage), or whether it is a covered loss, someone must determine what the amount of that loss is resulting from the alleged storm.

18. It is undisputed that the appraisal clause applies to the dispute over the amount of Plaintiff's loss. Plaintiff has properly and timely invoked the appraisal clause in the Policy.  Therefore, Texas law mandates that Defendant comply with the appraisal clause as properly requested by Plaintiff.

19. In *Johnson,* the Court held that "the scope of appraisal is damages, not liability." *Id.* at 890. However, this does not mean the cause of damage is not relevant in the appraisal process. In explaining its holding, the *Johnson* Court recognized that "causation relates to both liability and damages because it is the connection between them." *Id.* at 891-892. Therefore, "appraisers must always consider causation, at least as an initial matter." *Id.* at 893. The Court made clear that, "an appraisal is for damages caused by a specific occurrence, not every repair a home might need." *Id.* Therefore, appraisal cannot be avoided merely because there is a question of causation. *Id.*

20. In *Johnson,* State Farm made the argument that appraisal was not appropriate because there was a dispute concerning causation. The Supreme Court held that State Farm's argument

failed because appraisers must be allowed to allocate damages between covered and excluded perils or they would never be able to assess hail damage unless a roof was brand new.

21. This holding has been followed by the appellate courts in numerous cases in which the insurer denied there was a covered loss. *See In re Texas Windstorm Ins. Ass'n,* 2013 WL 4806996 (Tex.App.—Houston [14th Dist.] 2013, orig. proceeding); *In re Public Service Mut. Ins. Co.,* 2013 WL 692441 (Tex.App.—Austin 2013, orig. proceeding), *In re Southern Ins. Co.,* 2011 WL 846205 (Tex.App.—Beaumont 2011, orig. proceeding).

22. The court in *In re Southern,* 2011 WL 846205 (Tex.App.—Beaumont 2011, orig. proceeding) rejected the plaintiff's argument that the insurer must agree that the loss is covered by the policy before there was a failure to agree as to "amount of loss." The court held:

> The parties dispute causation. Southern contends that the damage to Neisen's home is the result of long term repeated leakage, and Neisen contends the damage was caused by winds during Hurricane Ike. Nevertheless, following the Supreme Court's decision in *Johnson,* we conclude that under the circumstances the appraisal should be determined as an initial matter and the parties may then litigate causation questions. *See id.* at 894. "[W]hen an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it." *Id.* "When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong." *Id.* The appraisal clause "binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts." *Scottish Union & Nat'l Ins. Co.,* 8 S.W. at 631.

23. Under similar facts here, the policy does not require the insurer to acknowledge liability before appraisal is appropriate. As such, under Texas law, the policy appraisal provisions

should be enforced in this matter.

24. While Texas courts have held that an insured can waive its right to appraisal, the intent for such waiver must be clearly demonstrated by the surrounding facts and circumstances. *In re Continental Cas. Co.,* No. 141-10-00709-CV, 2010 WL 3703664, at *3 (Tex.App.—Houston [14th Dist.] September 23, 2010, no pet.) (citing *Jernigan v. Langley,* 111 S.W.3d 153, 156-57 (Tex. 2003)).

25. Texas courts are extraordinarily hesitant to find waiver of an appraisal clause. *See Scottish Union,* 8 S.W. at 632 (holding inspection of damage, partial adjustment of claim, offer to pay for certain items and acceptance of inventory of lost or damaged items did not waive appraisal as to value of disputed items damaged in fire). To constitute a waiver of appraisal, the action by the insured must be "reasonably calculated to induce the insurer to believe that compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability or a refusal to pay the loss." *Id.*

26. The facts in this case do not give rise to a waiver. Plaintiff invoked appraisal only after Defendant failed to pay the full amount owed under the policy.  Moreover, Plaintiff invoked the appraisal provision after the parties reached an impasse in negotiations.  This is the direct evidence of disagreement between the parties on the amount of loss, thereby justifying Plaintiff's demand for appraisal.

27. In addition, a "waiver is an affirmative defense that can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right." *In re Acadia Ins. Co.,* 279 S.W.3d 777, 779 (Tex. App.—Amarillo

2007, orig. proceeding) *(citing Tenneco, Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 643 (Tex. 1996)) (applying waiver standard to appraisal clause). As such, the Defendant bears the burden of showing affirmative facts evidencing an insured's intention to relinquish the right to appraisal. *In re State Farm Lloyds,* 170 S.W.3d at 634. Defendant has not and cannot show any facts to meet its burden in this case.

28. The *Universal* Court noted that "mere delay is not enough to find waiver; a party must show that it has been prejudiced." *Universal,* 345 S.W.3d at 411 (citing *Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.,* 981 F.Supp. 581 (N.D. Iowa 1997)). The court reasoned that "[i]f the insured has suffered no prejudice due to delay, it makes little sense to prohibit appraisal when it can provide a more efficient and cost-effective alternative to litigation." *Id.* In light of this rationale, and noting the tendency of other jurisdictions to so require, the court concluded that in order to establish waiver a party must show that "an impasse was reached, and that any failure to demand appraisal within a reasonable time prejudiced the opposing party." *Id.* at 412. The court then went on to note that "it is difficult to see how prejudice could ever be shown when the policy ... gives both sides the same opportunity to demand appraisal." *Id.*

29. As the *Universal* court noted, it is difficult to demonstrate how Defendant could be prejudiced by appraisal, as the policy of insurance provides Defendant with the same opportunity to demand appraisal afforded to Plaintiff. Proceeding with appraisal in the instant case would not cause Defendant to suffer any "inherent unfairness in terms of delay, expense or damage to his legal position." *See Id.* at 411, (citing *Perry Homes v. Cull,* 258 S.W.3d 580, 597 (Tex. 2008).

8

30. Consistent with the *Universal* opinion, two more recent appellate opinions have held the Defendant must show delay and prejudice to avoid appraisal. In *EDM v. Hartford,* the court found no prejudice to the insured. No. H-10-3754, 2011 WL 2619069, at *1 (S.D. Tex. 2011).  In that matter, the claim was originally adjusted but suit not filed until almost two years after the storm. *Id.* After suit had been filed the parties proceeded to mediation. *Id.* Only after mediation failed and several months after suit was filed did the carrier invoke appraisal. *Id.* at *2. The court found that impasse had been reached only after the parties failed at mediating their claims. *Id.* at *6. Moreover, the insured had not demonstrated any prejudice. *Id.* (defining prejudice for the purposes of waiver as the inherent unfairness in terms of delay, expense, or damage to a party's legal position). *See also In re Cypress Texas Lloyds,* 419 S.W.3d 443, 444-45 (Tex.App.—Beaumont 2012, orig. proceeding).

31. The Court in *In re Cypress Texas Lloyds,* held that there was no prejudice even though they had incurred litigation expenses including hearings, motions and expert fees. 419 S.W.3d at 444-45. The court stated that the parties could have avoided the costs by requesting the appraisal and concluded that "when a party knows of its right to request an appraisal and does not make that request, it is difficult to attribute the costs incurred to the opponent." *Id.* at 445.

32. Pursuant to the Policy's terms, Defendant in this case was entitled to demand appraisal and could have avoided any perceived prejudice by making the demand itself. *Universal,* 345 S.W.3d at 412; *In re Cypress Texas* Lloyds, 419 S.W.3d at 445-45. Defendant did not proactively exercise its rights nor can it show any prejudice as a result of Plaintiff's actions. Therefore, no waiver has occurred and appraisal should be compelled. In the instant case, Defendant would suffer no prejudice by this matter proceeding to appraisal. To date,

Defendant has incurred little notable expenses and the parties have conducted minimal discovery in this matter.

33. Courts have the discretion to stay or abate insurance litigation—such as the instant case—until appraisal is complete. *See In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d at 564-65; *Vanguard Underwriters Ins. Co.,* 999 S.W.2d at 450-51; *James v. Prop. & Cas. Ins. Co. of Hartford,* No. H-10-1998, 2011 WL 4067880 (S.D. Tex. Sept. 12, 2011); *United Neurology, P.A. v. Hartford Lloyds Ins. Co.,* No. H-10-4248, 2012 WL 423417 (S.D. Tex. Feb. 8, 2012).   Moreover, recognizing this as the law and that to allow the litigation to proceed while appraisal is underway would be an unnecessary waste of valuable court resources and otherwise unnecessarily increase attorney and litigation fees to all parties; courts have the discretion and have been staying or abating insurance litigation such as the one here until appraisal is complete. *See In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 564-65 (Tex.App.—Houston [14th Dist.] 2010); *Vanguard Underwriters Ins. Co. v. Smith,* 999 S.W.2d 448, 450-51, (Tex.App.—Amarillo 1999); *James v. Prop. & Cas. Ins. Co. of Hartford,* No. H-10-1998, 2011 WL 4067880 (S.D. Tex. Sept. 12, 2011); *United Neurology, P.A. v. Hartford Lloy"s Ins. Co.,* No. H-10-4248, 2012 WL 423417 (S.D. Tex. Feb. 8, 2012).

34. The Texas Court of Appeals in *Vanguard Underwriters Ins. Co.,* and *In re Slavonic Mut. Fire Ins. Ass'n* also upheld abatement of the lawsuit pending the appraisal process finding a condition precedent in the policy which provides, "no suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues." *Vanguard,* 999 S.W.2d at

450-51; *In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d at 565; *James,* No. H-10-1998, 2011WL4067880 at *2; *United Neurology, P.A.,* No. H-10-4248, 2012 WL 423417 at *1-2. These Courts have concluded that because appraisal is a condition precedent to suit, abatement is appropriate. In the instant matter, the same policy language is present. Accordingly, this Court should also abate this lawsuit pending the appraisal process.

35. Plaintiff therefore moves for abatement of all of the pre-trial deadlines currently pending in an effort to avoid the unnecessary expenditure of time and resources in a case where such investment may prove ultimately unnecessary. Plaintiff's request is not made for the purposes of delay.

36. Appraisal is appropriate in this matter. It is required by the insurance policy, and the Texas Supreme Court has held that "like any other contractual provision, appraisal clauses should be enforced." *Johnson,* 290 S.W.3d at 895. Similarly, it is appropriate and within this Court's discretion to abate this lawsuit pending the appraisal process.

## IV.
## REQUEST FOR ATTORNEY FEES

37. Defendant has been attempting to evade appraisal across multiple lawsuits—in some cases after it had already agreed to appraisal. Here, Defendant has no valid reason to disregard the terms of its policy; has not provided any such reason other than they simply do not wish to go through appraisal; and has forced Plaintiff to draft, file, and argue this motion. Appraisal is a condition under the terms of the policy once properly invoked. As discussed in the motion, Plaintiff has properly invoked appraisal in this case, and Defendant is required to participate. Instead, Defendant wants to waste the parties' and the Court's time

and resources arguing baseless and frivolous objections.  Therefore, Plaintiff requests the court to award Plaintiff reasonable attorney fees and costs associated with preparing, drafting, and arguing the motion.

V.
CONCLUSION & PRAYER

38. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays this Court grant this Motion to Compel Appraisal and Abatement pending completion of the appraisal process, and stay all proceedings, including but not limited to, all discovery, pending motions and hearings, until such time as Plaintiff and Defendant advise the Court that the appraisal process has been completed.

Respectfully submitted,

Eric B. Dick, LL.M.
SBN: 24064316
DICK LAW FIRM, PLLC
3701 Brookwoods Drive
Houston, Texas 77092
832-207-2007 Office
eric@dicklawfirm.com

## CERTIFICATE OF SERVICE

I certify that in accordance with the Texas Rules of Civil Procedure I served a true and correct copy of the above on the parties of record. This service was made in a manner appropriate under the Texas Rules of Civil Procedure.

Eric B. Dick, LL.M.
SBN: 24064316

September 25, 2019

9/25/2019 2:36 PM
Diane Trautman
County Clerk
Harris County

CAUSE NO. 1135271

| | | |
|---|---|---|
| **PHILIP NIGRO,** | § | **IN THE COUNTY CIVIL COURT** |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **AT LAW NUMBER 2** |
| | § | |
| **UNITED PROPERTY & CASUALTY** | § | |
| **INSURANCE COMPANY,** | § | |
| *Defendant,* | § | |
| | § | **HARRIS COUNTY, TEXAS** |

<u>NOTICE OF HEARING</u>

BE IT KNOWN that **PLAINTIFF'S MOTION TO COMPEL APPRAISAL AND ABATEMENT** has been set for an oral hearing on October 15, 2019, at 9:15 am at the Harris County Civil Court at Law TWO, located at 201 Caroline, Houston, Texas 77002.

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the above was served to parties of record in a method appropriate under Texas Rules of Civil Procedure.

Signed on September 25, 2019

Eric Dick, LL.M.
TBN: 24064316
**DICK LAW FIRM, PLLC**
3701 Brookwoods Dr.
Houston, Texas 77092
(844) 447-3234 Telephone
eric@dicklawfirm.com

**Harris County - County Civil Court at Law No. 2**

**CAUSE NO. 1135271**

| | | |
|---|---|---|
| PHILIP NIGRO, | § | IN THE COUNTY CIVIL COURT |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| v. | § | AT LAW NUMBER 2 |
| | § | |
| UNITED PROPERTY & CASUALTY | § | |
| INSURANCE COMPANY, | § | |
| *Defendant,* | § | |
| | § | HARRIS COUNTY, TEXAS |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL
APPRAISAL AND ABATEMENT**

Before the Court is Plaintiff's Motion to Compel Appraisal and Abatement (the "Motion"). Having considered the Motion, Defendant's response, if any, and the evidence and the pleadings and papers on file, the Court finds there is good and sufficient cause for the Motion and that the Motion should be **GRANTED**.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Motion is hereby in all things GRANTED.

IT IS FURTHER ORDERED that Defendant is hereby compelled to participate in the appraisal process as set forth in the policy of insurance referenced in the Motion. Defendant shall submit its appraiser appointment to Plaintiff within seven (7) days of the date of this Order.

IT IS FURTHER ORDERED that Plaintiff's entire claim shall be submitted to the appraisal process.

IT IS FURTHER ORDERED that the above-styled and captioned cause is hereby ABATED and STAYED for one hundred and twenty (120) days or until such time as Plaintiff and Defendant advise the Court that the appraisal has been completed. This abatement includes all

objections and responses to outstanding written discovery and all trial deadlines, including all expert designations and discovery cutoff. Objections and responses to any served discovery—including Requests for Admission, Requests for Production, Requests for Disclosure and Interrogatories—will be due sixty (60) days following the date of the appraisal award.

IT IS FURTHER ORDERED that Defendant pay Plaintiff's reasonable attorneys' fees and costs associated with preparation, drafting, and arguing Plaintiff's Motion to Compel Appraisal in the amount of $_____.

SIGNED on _____.

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

*/s/ Eric B. Dick*
Eric B. Dick, LL.M.
SBN: 24064316
3701 Brookwoods Dr.
Houston, Texas 77092
(844) 447-3234 Telephone
eric@dicklawfirm.com